# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

Hakimah Qualls,

   Plaintiff,

            v.                                  Case No. 2:14-CV-476 JVB

Gary Indiana City of, *et al.*,

   Defendants.

## OPINION AND ORDER

     Plaintiff Hakimah Qualls sued the City of Gary, the City of Gary Housing Authority, and various police officers and reserve police officers for violations of her constitutional rights as well as violations of Indiana laws. Of the Defendants that remain in this case, all of them moved for summary judgment. Plaintiff is opposing the motions, insisting that her claims must be tried before the jury. She is also seeking to strike the motions on procedural grounds.

**A.**    **Summary Judgment Standard**

     Under Federal Rule of Civil Procedure 56(a), the Court must grant a motion for summary judgment if the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party supports its motion for summary judgment with affidavits or other materials, it thereby shifts to the non-moving party the burden

of showing that an issue of material fact exists. *Keri v. Bd. of Trust. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *Keri*, 458 F.3d at 628. A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249–50 (1986).

**B.  Plaintiff's Motions to Strike**

Plaintiff seeks to strike the defendants' motions on procedural grounds, for having failed to set out separately a statement of undisputed material facts. She also believes, albeit wrongly, that certain witness statements should be stricken as hearsay (e.g., reference to a 911 caller's statements). True, a well-organized brief, one that follows the Local Rules, would give the opponent and the Court a clearer understanding of the parties' positions and as such should be an ideal for every lawyer. Defendants have fallen short of that ideal but their briefs are not so deficient that they should be stricken. As for the purported hearsay statements and the defendants' expert's opinions, Plaintiff has not shown that they are not admissible. The statements that Plaintiff argues are hearsay are not proposed for the truth of the matters asserted and the challenge to the expert's opinions is really a challenge to the weight, not the admissibility, of those opinions.

**C.  Summary of the facts**

As required, the Court construes the facts in the light most favorable to Plaintiff.

In addition to employing regular police officers, the City of Gary employs volunteer police officers whom it calls "reserve officers." The reserve officers have police powers but they are required to work only thirty-two hours a month and they have abbreviated training as compared to the regular duty officers. Some of the reserve officers are employed by the Gary Housing Authority ("GHA"), an entity that is separate from the City of Gary or its police department.

GHA maintains low-cost housing units in Gary, including Delaney Housing Projects. While employing the reserve officers, GHA does not train them; rather it relies on the training by the Gary Police Department.

On February 9, 2013, Reserve Officer Craig Morris was working for GHA as a security officer at the Delaney Housing Projects. That night, he and another reserve officer, J. Franklin, were dispatched to the Dorie Miller Housing Projects in response to a fight. The dispatcher told them that a 911 caller claimed that some women were beating at the caller's door with sticks and bats. When Franklin and Morris arrived, Reserve Officer Woods and Corporal Clark were at the caller's home. At some point, the caller saw Plaintiff and told the reserve officers that she was one of the women involved in the altercation.

The reserve officers tried to speak to Plaintiff, but she began screaming obscenities at them. Franklin told Plaintiff that he would arrest her for disorderly conduct if she continued to yell at them. This failed to dissuade Plaintiff who continued to yell and curse at them. She became even louder as she wanted a lot of people to hear what she was saying. When warned again about getting arrested, Plaintiff told Franklin, "Do whatever you got to do."

Franklin then arrested her for disorderly conduct and instructed Woods to place her into the patrol car. Woods did so.

Policer Officer T.F. Tatum was on the scene but did not get involved, believing that there were enough officers handling the situation. Once he saw Franklin arresting Plaintiff, Tatum left the area.

Plaintiff did not stay in the car for long. She was able to get out, still in handcuffs, and began walking away.

Police Officer Emilio Guajardo was also dispatched to the housing projects. He saw Plaintiff as she was walking away from the police car. He ordered her to stop and walk back, after which Morris ran after Plaintiff and grabbed her. Officer Guajardo himself had no contact with Plaintiff.

Plaintiff claims that Morris, who is 6' tall and weighs 240 pounds, pulled her by her hair and slammed her head against the hood of the squad car. Plaintiff weighs 120 pounds and is 4'11". He forced her into the back of the police car, choking her and lying on top of her. Plaintiff spat or was about to spit, and Morris struck her in the face with a closed fist. At this point, Franklin pulled Morris off Plaintiff. Morris claims he struck Plaintiff in the face to prevent her from continually spitting at him. He also claims she was kicking or trying to kick him in the groin.

Guajardo remained in the vicinity until Plaintiff was placed in the squad car. He then left.

Once Plaintiff was in the squad car, Morris and Franklin transported her to the police station. When Plaintiff was let out of the car, she collapsed, but Morris and Franklin attributed that to her being drunk. They carried her inside, where Plaintiff began complaining of not being able to breathe. For more than an hour, despite her complaining repeatedly—she says she was

passing in and out of consciousness and had difficulty talking—Morris discounted her complaints as fake and told others to disregard her. He sat with his feet on a desk, telling others that Plaintiff was playing possum. Eventually he called paramedics, who evaluated Plaintiff and told Morris that she had to be taken to the hospital. Morris told the paramedics that she could not ride in the ambulance, but that he would take her there. At the hospital, Plaintiff was diagnosed with a hairline fracture of the jaw. She also complained of shoulder and hip pain.

Several police officers kept guard of Plaintiff at the hospital. She asked to call an attorney, but they would not let her. Instead, Plaintiff's friend contacted Plaintiff's attorney unbeknownst to her.

Three days after Plaintiff's arrest, Police Officer Freddie Cook, who was assigned to investigate the charges against Plaintiff, interviewed Plaintiff at the hospital. Plaintiff claims that she asked Cook to allow her to speak to an attorney but he would not let her. After completing his investigation, Cook decided there was enough probable cause to charge Plaintiff with disorderly conduct, battery, and resisting arrest and filed the probable cause affidavit with the Lake County Prosecutor's Office.

**D.   Analysis**

**(1)   *Morris, Franklin, Guajardo, and Tatum***

Plaintiff insists that Franklin and Morris arrested her in violation of the First Amendment to the U.S. Constitution. She maintains that she was exercising her right to freedom of speech, when she shouted at the reserve officers, called them names, and was loud. Thus, according to Plaintiff, they had no probable cause to arrest her. Morris and Franklin claim that their conduct is shielded by qualified immunity.

Likewise, Plaintiff claims that Morris used unreasonable physical force against her that was greater than necessary to effectuate her arrest. She also argues that Franklin, Guajardo, and Tatum failed to intervene when they saw Morris abusing her. Plaintiff also submits that Morris denied her medical care when she was at the police station.

The doctrine of qualified immunity protects government officials, including police and corrections officers, from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). When determining if qualified immunity applies, courts focus on the objective reasonableness of the defendant's actions. The court is tasked with determining "whether a reasonable police officer could have believed that [his] conduct was constitutional in light of the clearly established law and the information [he] possessed at the time." *Frazell v. Flanigan*, 102 F.3d 877, 886 (7th Cir. 1996). Furthermore, under the doctrine of qualified immunity, "officials are not liable for bad guesses in gray areas: they are liable for transgressing bright lines." *Gordon v. Whitted*, 2005 WL 1290644, at *10 (N.D. Ind. May 27, 2005).

Courts ask two questions when determining whether public officials are entitled to qualified immunity: (1) "whether the alleged conduct sets out a constitutional violation, and (2) whether the constitutional standards were clearly established at the time in question." *Long v. Barrett*, 2002 U.S. Dist. LEXIS 7144, at *13 (S.D. Ind. Feb. 26, 2002). Importantly, the plaintiff bears the burden of demonstrating the violation of a clearly established right. *Forman v. Richmond Police Dept.*, 104 F.3d 950, 957–58 (7th Cir. 1997). A violation is only "clearly established where: (1) a closely analogous case establishes that the conduct is unconstitutional; or (2) the violation is so obvious that a reasonable state actor would know that his actions violated the Constitution." *Siebert v. Severino*, 256 F.3d 648, 654–55 (7th Cir. 2001).

The second prong of the qualified immunity inquiry is most critical and examines "whether, in light of precedent existing at the time, [the officials were] plainly incompetent" in pursuing their chosen course of action. *Stanton v. Sims*, 134 S. Ct. 3, 5 (U.S. 2013) (finding a police officer was not plainly incompetent, and thus entitled to qualified immunity, when entering a third-party's residence while in hot pursuit of a misdemeanor suspect). In *Stanton*, the Supreme Court reiterated that it does "not require a case directly on point before concluding that the law is clearly established, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id*. at 4–5 (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011)).

Franklin and Morris ask for summary judgment in their favor on Plaintiff's unlawful arrest claim. The Court agrees that qualified immunity shields them from liability, as Plaintiff has not shown either a closely analogous case demonstrating that they were on notice of unconstitutional conduct or that their conduct was so obviously illegal that a reasonable officer would know that his actions violated the Constitution. In addition, the resident who called 911, and who spoke to Franklin and Morris upon their arrival, identified Plaintiff as one of the violent intruders, which under the circumstances gave rise to probable cause to arrest her. For this same reason, Plaintiff's state law claim of false imprisonment fails, even when her own account of what happened is credited.

However, Plaintiff has set forth enough facts to require a trial on her excessive force and failure to intervene claims. If it is true that Morris pulled Plaintiff by her hair, slammed her head against the hood, hit her with a closed fist in the jaw with enough force to break it, without justification, then a reasonable jury could find in her favor. Likewise, a reasonable jury could find that Franklin, who was with Morris, did not intervene in time and that Guajardo also failed to intervene after Guajardo ordered her to stop and Morris grabbed her. A police officer may not

"fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge." *Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972)

Moreover, Plaintiff may proceed on her claim that Morris denied her adequate health care while she was at the police station. She established, for summary judgment purposes, that Morris knew or should have known that she was greatly suffering as a result of his attack upon her, and he should have recognized that her medical needs were real.

However, there is no evidence that Tatum was nearby when Morris was allegedly manhandling Plaintiff. While he was at the scene early on, before Plaintiff was arrested, he left immediately after her arrest and did not witness her either escaping the squad car or being put back into it. In addition, he had no other involvement with this case, and as a result, a summary judgment will be entered in his favor.

### *(2) GHA and the City of Gary*

Since there are genuine issues of material fact as to whether Morris used unreasonable force against Plaintiff and denied her access to medical care, and whether Franklin and Guajardo may have failed to stop Morris's rage, the question arises whether there are materials issues of fact as to GHA's and the City of Gary's liability.

Plaintiff hasn't shown that in the past either GHA or the City of Gary knew, condoned, encouraged, or enabled the kind of behavior that gives rise to Plaintiff's case, but she has shown that there are material issues of fact as to whether GHA simply relied on the Gary Police Department for their training and failed to properly train and supervise its reserve officer employees and. In turn, there are genuine issue of material facts whether the Gary Police Department, for which the City of Gary is responsible, provided sufficient training for the

reserve officers involved in this case. Accordingly, the Court will deny summary judgment for the GHA and the City of Gary on the questions of unreasonable force, failure to intervene, and failure to provide adequate medical care.

### *(3) Officer Cook*

Plaintiff believes that Officer Cook initiated the charges of disorderly conduct, battery and resisting arrest against her without any probable cause to do so. As discussed above, Plaintiff hasn't shown that Morris and Franklin had no probable cause to arrest her. Accordingly, Cook's reliance upon their accounts and his own investigation into the matter relieve him of any liability. As for the battery and resisting charges, Plaintiff hasn't demonstrated that Cook's reliance upon Morris and Franklin was unreasonable.

In addition, Plaintiff suggests that Cook denied her right to counsel when she was at the hospital. However, she has not shown that she had a right to counsel in the first place as no charges had been filed against her nor was she arraigned at the time Cook questioned her at the hospital.

For these reasons the Court will grant summary judgment in favor of Officer Cook.

### *(4) Claims for intentional and negligent infliction of emotional distress*

Indiana Tort Claims Act ("ITCA") controls claims brought against municipal defendants or their employees, and in this case prohibits Plaintiff's claims against the defendants because they were acting within the scope of their municipal employment in their interactions with her and her alleged damages arose out of their enforcement or failure to enforce a law. Therefore, summary judgment is granted against all defendants on Plaintiff's state law claims.

### E. Conclusion

For the reasons sated above, the Court—

- Denies Hakimah Qualls's motions to strike;

- Grants in part and denies in part Craig Morris's motion for summary judgment;

- Grants in part and denies in part J. Franklin's motion for summary judgment;

- Grants in part and denies in part Emilio Guajardo's motion for summary judgment;

- Grants T.F. Tatum's motion for summary judgment;

- Grants Freddie Cook's motion for summary judgment;

- Grants in part and denies in part Gary Housing Authority's motion for summary judgment; and

- Grants in part and denies in part the City of Gary's motion for summary judgment.

SO ORDERED on March 29, 2019.

s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE